# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HARRY NEWMAN, Administrator Pendente Lite of the Estate of Lauren B. Angstadt, Deceased; THOMAS A. WALLITSCH, Administrator Pendente Lite of the Estate of Peter John Karoly, Deceased; and PATRICIA and JOHN MILOT, Co-Administrators of the Estate of Michael J. Milot, Deceased;**
                               **Plaintiffs,**

**-vs-**                                          **Case No.  6:09-cv-193-Orl-28GJK**

**SOCATA SAS, SOCATA NORTH AMERICA, INC., SIMCOM INTERNATIONAL, INC., and PRATT & WHITNEY CANADA CORP.,**
                               **Defendants.**

_____

## ORDER

In February 2007, a Socata TBM 700B aircraft ("the TBM 700") piloted by Michael Milot crashed during a missed approach at New Bedford Regional Airport in Massachusetts, killing Mr. Milot and the two passengers on the plane.[1]  The crash allegedly occurred due to a loss of control consistent with a "torque roll"—a roll to the left upon an increase in engine power such as would occur during a missed approach—for which the TBM 700 allegedly had a known propensity.  Prior to the crash, Defendant Simcom International, Inc. ("Simcom")

_____

[1]The other two occupants of the plane were Peter Karoly and his wife, Lauren Angstadt.  As stated in the Amended Complaint, Mr. Milot was employed by Mr. Karoly's law firm as the company pilot.  (See Am. Compl., Doc. 6, ¶¶ 17-19).

had trained Mr. Milot, a licensed pilot, in the operation of the TBM 700 but allegedly did not warn him of the TBM 700's propensity to torque roll when engine power is increased.

Plaintiffs, the administrators of the deceased's estates, have sued Simcom, alleging breach of contract and negligence,[2] but Simcom moves to dismiss, arguing that these claims are in essence "educational malpractice claims" that are not cognizable in Florida.[3]  Florida courts have barred "educational malpractice" claims, but it is not likely that the Supreme Court of Florida would extend that bar to the claims against Simcom, a private, for-profit flight school that allegedly owed and breached a duty to warn and train regarding a known lethal propensity of an aircraft.  Accordingly, Socata's motion to dismiss must be denied.

I.  Allegations of the Amended Complaint

Under an agreement with Socata, Simcom provided the majority of TBM 700 simulated flight training offered in the United States, and Simcom held itself out as the leading provider of classroom and simulator-based flight training on the TBM 700.  (Id. ¶¶ 35, 36).  In July 2006—seven months prior to the crash at issue here—Mr. Milot attended Simcom's initial TBM 700 flight training program at the company's training center in Orlando, Florida.  (Id. ¶ 37).  The program was designed to train experienced pilots to fly the TBM 700 aircraft.  At the conclusion of the course, Mr. Milot was issued a Pilot Proficiency Certificate, indicating that he had successfully completed the initial training course in accordance with

_____

[2]These claims are Counts V and VI, respectively, of the Amended Complaint (Doc. 6).

[3]The Court heard oral argument on the motion on January 17, 2013.  (See Mins., Doc. 83).

Simcom's standards.  (Id.).

By the time of the crash at issue in this case, there had already been at least fifteen accidents reported by the National Transportation Safety Board and its counterpart, the United Kingdom Air Accidents Investigation Branch, referencing torque roll or similar conditions.  (Id. ¶ 29).  Simcom allegedly knew or should have known about the accidents involving torque roll of TBM 700 aircraft and the defective, unsafe, and dangerous flight characteristics of the aircraft.  (Id. ¶¶ 89, 90).  Plaintiffs assert that Simcom owed a duty to warn Mr. Milot of the TBM 700's known propensity to torque roll and to otherwise competently train him regarding flying that type of aircraft.  (Id. ¶¶ 78-79).  Plaintiffs further allege that there was a foreseeable risk of harm from Simcom's acts or omissions and that Simcom breached its duty by failing to inform and warn Mr. Milot of the propensity of the TBM 700 to torque roll.  (Id. ¶¶ 79, 81, 87-88).  Finally, Plaintiffs contend that Simcom's failure to warn Mr. Milot and to train him regarding the torque roll propensity of the TBM 700 was the proximate cause of the crash and of the deaths of the three occupants of the plane. (Id. ¶¶ 38, 82, 83, 122).

## II.  Pleading Standards

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

III.  Discussion

### A.  Educational Malpractice

The substantive issues in this diversity case are governed by state law, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), and as agreed by the parties the applicable state law is that of Florida.  Thus, the task of this federal court is to apply established Florida law or, in the absence of such established law, to predict how the Supreme Court of Florida would rule on the state law questions presented.  See GuideOne Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1326 n.5 (11th Cir. 2005).

In its motion to dismiss, Simcom contends that although the claims against it are pleaded as breach of contract and negligence claims, these claims are essentially assertions of "educational malpractice"—a cause of action not recognized in Florida.   Plaintiffs acknowledge that Florida case law precludes causes of action for educational malpractice, but Plaintiffs maintain that their claims are not of the type that Florida courts have found to constitute noncognizable claims of educational malpractice.  I agree with Plaintiffs' position.

Like courts in many other states, Florida courts refuse to recognize a cause of action for educational malpractice.  Florida's Third District Court of Appeal first declared such lack of recognition in 1982, see Tubell v. Dade Cnty. Pub. Sch., 419 So. 2d 388, 389 (Fla. 3d DCA 1982), and the bar on such claims has been noted by other district courts of appeal and

by the Supreme Court of Florida as well, see Dep't of Health & Rehabilitative Servs. v. B.J.M., 656 So. 2d 906 (Fla. 1995); Simon v. Celebration Co., 883 So. 2d 826, 832 & n.5 (Fla. 5th DCA 2004); Monroe v. Sarasota Cnty. Sch. Bd., 746 So. 2d 530, 533 n.4 (Fla. 2d DCA 1999); Armstrong v. Data Processing Inst., Inc., 509 So. 2d 1298, 1299 (Fla. 1st DCA 1987).[4]  While these cases all mention educational malpractice, most of them do not actually discuss the claims or the reasons for barring educational malpractice claims.  Tubell squarely addressed the question of whether such claims should be recognized in Florida—answering it in the negative—but the court did so only by opining that no cause of action was stated and then citing decisions from other states.  419 So. 2d at 389; accord Armstrong, 509 So. 2d at 1299 (stating that "educational malpractice . . . is not cognizable in Florida," citing Tubell and one New York case).  The Simon court noted that "[m]ost cases involving educational malpractice deal with plaintiffs who allege that their school failed to teach them reading[] or failed to properly diagnose a learning disability,"  883 So. 2d at 832 n.5, and the Monroe court explained that "courts have traditionally refused to create a cause of action for 'educational malpractice' based primarily upon public policy considerations," 746 So. 2d at

_____

[4]In one other Florida appellate opinion—a per curiam affirmance devoid of facts or legal discussion—the court cited Armstrong and Tubell.  Everett v. Univ. of Miami, 526 So. 2d 1055 (Fla. 3d DCA 1988).  Presumably Everett also involved a claim of educational malpractice, as that was the common issue in Armstrong and Tubell.

Federal courts applying Florida law have also noted that educational malpractice claims are not recognized in this state.  See Rohn v. Palm Beach Cnty. Sch. Bd., No. 11-81408-CIV, 2012 WL 6652940, at *3 (S.D. Fla. Dec. 21, 2012); C.P. v. Leon Cnty. Sch. Bd., No. 4:03 CV 65 RH/WCS, 2005 WL 2133699, at *5 (N.D. Fla. Aug. 27, 2005); Watts v. Fla. Int'l Univ., No. 02-60199-CIV, 2005 WL 3730879, at *12 (S.D. Fla. June 9, 2005), vacated in part on other grounds, 495 F.3d 1289 (11th Cir. 2007).

533 n.4.

Indeed, the only Florida case to discuss the basis for the bar on educational malpractice claims is B.J.M., and even it did so as a secondary basis for its decision.  B.J.M. involved a negligence claim against the Florida Department of Health and Rehabilitative Services ("HRS") by a minor who had been adjudicated dependent and delinquent; the minor asserted negligent provision of training and educational services.  The Supreme Court of Florida held that sovereign immunity barred the claim, noting that "the courts, through tort actions, are ill-suited to second-guess HRS's decisions as to the provision and choice of services each time there is an unsatisfactory outcome." 656 So. 2d at 914.  After finding that sovereign immunity barred the claim, the B.J.M. court went on to state that it "also believe[s] the reasoning of the decisions which have recognized governmental immunity with respect to claims for educational malpractice may be applied here." Id. at 914.  Citing Tubell, the Supreme Court noted that "[c]ourts, including those in Florida, have rejected claims of educational malpractice as a tort action for a variety of reasons, one being that it would offend the separation of powers between the three branches of government" and then concluded that "[t]he decisions concerning the allocation of educational services to children implicate the same or similar public concerns and policies as are implicated in the allocation of services for children by HRS." Id.

The B.J.M. court referred with approval to policy considerations discussed in decisions from other states, including New York and California.  For example, the court discussed Hoffman v. Board of Education of the City of New York, 400 N.E.2d 317 (N.Y.

1979), in which New York's highest court noted that allowance of educational malpractice claims would result in courts and juries micromanaging the educational process and second-guessing the board of education in its exercise of professional judgment. The <u>Hoffman</u> court also hinted that allowing such causes of action would invite a rush of litigation based on failed academic expectations. The <u>B.J.M.</u> court also cited <u>Peter W. v. San Francisco Unified School District</u>, 131 Cal. Rptr. 854 (Ct. App. 1976), where, in rejecting the plaintiff's claim that the public school board was negligent in failing to discover a child's reading disability, a California appellate court explained that "[u]nlike the activity of the highway or the marketplace, classroom methodology affords no readily acceptable standards of care, or cause, or injury.  The science of pedagogy itself is fraught with different and conflicting theories of how or what a child should be taught and any layman might—and commonly does—have his own emphatic views on the subject." <u>Id.</u> at 860, 861.

From <u>Tubell</u> and <u>B.J.M.</u>, it seems clear that Florida courts do not and would not allow a claim of educational malpractice against a public provider of general education.  Indeed, based on the names of the defendants in some of the other Florida cases, the bar has likely already been extended—by some of Florida's intermediate appellate courts, at least—to even private entities providing general education.  <u>See, e.g.</u>, <u>Armstrong</u> (named defendant appears to be a private corporation); <u>Everett</u> (named defendant is a private university).  In order to prevail on its motion to dismiss, however, Simcom must persuade this Court that the Supreme Court of Florida would view the claims in this case as noncognizable educational

malpractice claims.[5]  This is where Simcom's position falls short.

"[A] federal court attempting to forecast state law must consider whatever might lend it insight, including 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" GuideOne, 420 F.3d at 1326 n.5 (quoting McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir. 1980)).  After considering such materials, I predict that the Supreme Court of Florida would not bar the claims against Simcom as educational malpractice claims.

In arguing that Plaintiffs' claims, which involve a failure to warn by a commercial enterprise providing specialized training regarding piloting a specific aircraft, are really "educational malpractice" claims, Simcom points out that other jurisdictions have extended the educational malpractice bar to private entities providing specialty training in a variety of fields.  See, e.g., Moss Rehab v. White, 692 A.2d 902, 905 (Del. 1997) (rejecting a claim

---

[5]In their opposition memorandum, Plaintiffs suggest that "since this is a matter of first impression under Florida law, this Court, rather than predict how the Florida Supreme Court might rule, could consider certification of the issue to the Florida Supreme Court for disposition." (Doc. 42 at 8 n.6).  Although this suggestion is certainly well-intentioned, "[a] [federal] district court lacks the authority to certify questions to the Florida Supreme Court." Liberty Mut. Ins. Co. v. Elec. Sys., Inc., 813 F. Supp. 802, 805 (S.D. Fla. 1993).  Such certifications may be made by a federal *appellate* court but not by this Court.  See Fla. Const. art. V, § 3(b)(6) (providing that the Supreme Court of Florida "[m]ay review a question of law certified by the Supreme Court of the United States or a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida"); Fla. R. App. P. 9.150(a) ("On either its own motion or that of a party, the Supreme Court of the United States or a United States court of appeals may certify one or more questions of law to the Supreme Court of Florida if the answer is determinative of the cause and there is no controlling precedent of the Supreme Court of Florida.").

against a driving school for negligence in "evaluating, recommending, and training" a driver); Page v. Klein Tools, Inc., 610 N.W.2d 900 (Mich. 2000) (barring the claim of a utility linesman against private training program that taught him to climb wooden utility poles; linesman was injured in fall from pole after he had completed the three-week course); Cavaliere v. Duff's Bus. Inst., 605 A.2d 397 (Pa. Super. Ct. 1992) (disallowing a claim by disappointed students against a Pennsylvania court reporting school).

In Page, the Supreme Court of Michigan recounted public policy reasons similar to those noted in Hoffman and Peter W. for refusal to recognize claims of educational malpractice: "(1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will 'embroil the courts in overseeing the day-to-day operations of schools.'" 610 N.W.2d at 903 (internal quotation and citation omitted).  The Page court also noted that "'education is a collaborative and subjective process whose success is largely reliant on the student'" and that it is "impossible to establish any quality or curriculum deficiencies as a proximate cause to any injuries.'" Id. at 904 (quoting Tolman v. CenCor Career Colls., Inc., 851 P.2d 203, 205 (Colo. App. 1992)).  The court characterized the injured linesman's negligence claim as a claim for educational malpractice that would require courts to "second-guess [the training program]'s decision to teach pole-climbing using the particular methods it chose." Id. at 905.

In addition to these cases, Simcom also cites several decisions that have extended the umbrella of protection of the educational malpractice bar to flight training providers.  See Glorvigen v. Cirrus Design Corp., 796 N.W.2d 541, 555 (Minn. Ct. App. 2011) (finding that claims against a flight school for failure to provide training on autopilot-assisted recovery in bad weather "sound in educational malpractice and are barred as a matter of law")[6]; Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc., 277 S.W.3d 696, 699 (Mo. Ct. App. 2008) (applying the bar to a claim that a flight school failed to advise of a known risk attached to "shutting down an engine in flight without the ability to properly feather the propeller"); Sheesley v. Cessna Aircraft Co., Nos. Civ. 02-4185-KES, 03-5011-KES, & 03-5063-JES, 2006 WL 1084103, at *14 (D.S.D. Apr. 20, 2006) (refusing to recognize negligence claim against flight school alleging "fail[ure] to include emergency procedures relating to exhaust system failures in its curriculum and [use of] a flight simulator that failed to accurately replicate" the specific aircraft on which pilots were being trained).[7]

In extending the protection to flight trainers and characterizing the claims as educational malpractice claims, these courts relied on the public policy factors recounted in other decisions.  For example, in Sheesley, the court quoted Page's four listed policy

---

[6]The decision of the Minnesota Court of Appeals is cited in Simcom's motion.  Since Simcom filed that motion, however, the Supreme Court of Minnesota reviewed Glorvigen and affirmed it on different grounds, without reaching the issue of educational malpractice.  See 816 N.W.2d 572, 584 (Minn. 2012).

[7]Additionally, although not cited by Simcom in its motion, an Illinois court—relying heavily on Dallas Airmotive—has also characterized a negligent training claim against a flight school as a barred "educational malpractice" claim.  See Waugh v. Morgan Stanley & Co., 966 N.E.2d 540 (Ill. App. Ct. 2012).

considerations and found all of them applicable to the case before it, concluding (1) that courts would "struggle with establishing the appropriate standard of care to evaluate flight training schools" and that "[s]chools . . . are in a better position [than courts] to determine what should be taught"; (2) that the "causation" and "nature of damages" issues were troubling; (3) that "every future plane crash [would] raise the specter of a negligent training claim against the flight school"; and (4) that "courts [would] end up running a large segment of higher education facilities" and that "schools, not courts, need to make curriculum decisions."  2006 WL 1084103, at *17-18.

At least two other courts, however, have declined to apply the educational malpractice bar to claims against commercial entities that provide flight training.  In decisions handed down after <u>Dallas Airmotive</u> and <u>Sheesley</u>, federal district court judges applying the law of Texas and New York have refused to extend the bar to claims of breach of duty in instructing pilots.  Acknowledging that <u>Dallas Airmotive</u> and <u>Sheesley</u> had relied on the four factors enumerated in <u>Page</u> in applying the bar, the court in <u>In re Cessna 208 Series Aircraft Products Liability Litigation</u>, 546 F. Supp. 2d 1153 (D. Kan. 2008), chose not to disturb the ruling of a Texas state trial court—prior to the case's removal to federal court—allowing to proceed claims that a flight school "negligently failed to properly instruct the pilots of the Cessna Caravan on how to avoid ice accumulation, the unusual dangers of airframe icing associated with the Cessna Caravan[,] and how to control the Cessna Caravan should ice accumulation occur."  <u>Id</u>. at 1157.

And, the thrust of the claim against the flight school in the second case, <u>In re Air</u>

<u>Crash Near Clarence Center, New York, on February 12, 2009</u>, No. 09-md-2085, 2010 WL 5185106, at *1 (W.D.N.Y. Dec. 12, 2010), was that the school's "training of [the pilots] was improper, insufficient, and substandard, and caused [the pilots] to not recognize ice-related aerodynamic conditions present at the time of the crash."   In rejecting the flight school's argument that the claim was one of educational malpractice and therefore noncognizable under New York law, the court noted that New York had extended the educational malpractice bar to private schools but concluded that "the specific policy considerations underlying New York's educational malpractice decisions [were] not present . . . to such a degree that [the court could] definitively conclude that" the claims had no chance of success in a New York state court.  <u>Id.</u> at *6.[8]  The <u>Clarence Center</u> court observed that the school was "a private corporation engaged in the business of providing specialized training" rather than a traditional educational institution; that "a New York court may find that the commercial, specialized training of airmen is not necessarily akin to the general education of children[] and is unlikely to result in a glut of suits challenging the day-to-day implementation of educational policies"; and that "a New York court could reasonably find that the specialized training at issue . . . does not implicate the same policy considerations present in the traditional educational setting."  <u>Id.</u>

    As earlier noted, based on <u>B.J.M.</u> and its citation of <u>Tubell</u>, I conclude that the Supreme Court of Florida would likely refuse to recognize educational malpractice claims

───────────────────

    [8]As Simcom correctly notes, the <u>Clarence Center</u> court addressed the educational malpractice issue in the context of a fraudulent joinder argument, in which a more lenient standard applies.  Nevertheless, the opinion is instructive.

against academic institutions—public or private—arising from their delivery of general academic instruction. Additionally, the Florida decisions previously cited seem to indicate that Florida courts will, in an appropriate case, construe claims as educational malpractice claims even if they are pleaded as other types of claims. Florida courts examine the true nature of the claims regardless of how a plaintiff labels them. See Tubell, 419 So. 2d at 389 n.1 ("While the plaintiff's complaint alleged, in separate counts, causes of action for negligence [and other torts], the underlying facts pleaded to support each count were, in fact, those that would support a claim for 'educational malpractice,' regardless of nomenclature."); Armstrong, 509 So. 2d at 1299 ("Regardless of the nomenclature, the gravamen of count III is a cause of action for educational malpractice . . . ."); Simon, 883 So. 2d at 832 (reversing trial court's ruling that plaintiff's claims for fraudulent inducement and negligent misrepresentation were "essentially . . . claims of educational malpractice," finding that claims actually sounded in fraud and misrepresentation).

However, having considered the limited application of the educational malpractice bar and the policy reasons for it recognized in Florida and elsewhere, I cannot conclude that the Supreme Court of Florida would recast Plaintiffs' claims of negligence and breach of contract against Simcom as educational malpractice claims. Such a conclusion is not warranted under existing Florida law or the policy considerations upon which the bar is based. Allowing the claims at issue—that a for-profit commercial entity, teaching a narrowly structured course on the operation of a specific type of aircraft, owed and breached a duty to warn and train regarding a known lethal propensity of the aircraft to torque roll—to proceed does not

implicate the public policy concerns expressed in B.J.M. or other cases imposing the bar.

The public policy considerations that are relied upon to bar traditional educational malpractice claims do not carry over to the flight training setting, at least not on the facts of this case.  The concerns noted in B.J.M. regarding sovereign immunity and separation of powers certainly are not present, and this case does not require inquiry into the nuances of educational theories, policies, methods, or curricula in an effort to establish satisfactory standards.

Additionally, unlike in traditional educational malpractice cases, concerns about causation and "the nature of damages" are not daunting in the context of this case.  In traditional educational malpractice cases, a finder of fact would be confronted with extraordinary problems in seeking to determine the cause of a student's failure to perform in an academic endeavor.  There are many outside factors at play that bear on a student's success, including "physical, neurological, emotional, cultural, [and] environmental [factors]; [these factors] may be present but not perceived, recognized but not identified."  Peter W., 131 Cal. Rptr. at 861.  Any number of other factors might also affect a student's performance, including "attitude, motivation, temperament, past experience and home environment," all of which may "play an essential and immeasurable role in learning."  Helm v. Prof'l Children's Sch., 431 N.Y.S.2d 246, 246-47 (N.Y. App. Term 1980) (quoting Donohue v. Copiague Union Free Sch. Dist., 391 N.E.2d 1352, 1356 (N.Y. 1979) (Wachtler, J., concurring)).  The allegations of the instant case include a failure to warn of a known life-threatening propensity of a particular aircraft on which Simcom was enlisted to provide

training.  They do not involve Mr. Milot's lack of success in study or his inability to learn. Familiar standards—duty, breach, and causation—are workable here, and the "nature of damages" is apparent in cases such as this one involving physical harm.  <u>See</u> Dan B. Dobbs, Paul T. Hayden, & Ellen M. Bublick, <u>The Law of Torts</u> § 333 (2d ed. 2011) ("When the defendant negligently trains another in such a way as to create a risk of physical harm to the trainee or to others, ordinary tort rules defining negligence and proximate cause can protect defendants in appropriate cases and yet permit recovery where the defendant's negligent training creates a risk of physical harm.").

Simcom unabashedly admits that application of the educational bar in cases such as this amounts to a categorical grant of immunity to all entities engaged in instruction in the operation of dangerous equipment.  A flight school could, without the burden of accountability, by omission or even affirmative misstatement encourage its students to engage in conduct that would endanger the student and others.  I cannot find that the Supreme Court of Florida would allow such a blanket of immunity.

On the contrary, it is likely that Florida courts would find sound policy reasons for allowing the claims against Simcom—founded on traditional common law causes of action—to proceed.  Simcom has not explained why Florida courts, which have long recognized negligence actions based on failure to warn, would not allow these claims to move forward.  A possibility of litigation against a private provider of services is not a valid reason for providing immunity from suit to such a provider.[9]  The Supreme Court of Florida

---

[9]The <u>Sheesley</u> court found compelling the possibility of a "specter of a negligent

would not likely sanction a policy absolving the school of responsibility to advise pilots in training of deadly flight characteristics of the subject aircraft that had resulted in a disproportionate number of crashes and fatalities. Cf. B.J.M., 656 So. 2d at 916 (stating that the Supreme Court of Florida "will not hesitate to subject the [HRS] to tort liability when its negligently conducted operational level activities expose children to specific foreseeable dangers that result in physical injuries to children").

Accordingly, I predict that the Supreme Court of Florida would allow the instant claims against Simcom to proceed despite Florida's failure to recognize "traditional" claims of educational malpractice.[10]  Simcom's motion to dismiss is therefore denied insofar as it is based on the educational malpractice bar.

B.  Pleading of Contract Claim

In its motion to dismiss, Simcom also challenges the sufficiency of the pleading of Plaintiffs' breach of contract claim under the Twombly and Iqbal standards.  In their Opposition (Doc. 42) to the motion to dismiss, Plaintiffs have moved for leave to file a second amended complaint to remedy the alleged deficiencies in the event the Court rules in their

_____

training claim against the flight school" after every plane crash, but I disagree with that conclusion.  On the other hand, the comments on the issue in the Clarence Center decision are more persuasive. See also Dan B. Dobbs, Paul T. Hayden, & Ellen M. Bublick, The Law of Torts § 333 (2d ed. 2011) (noting that some cases involving training schools, including Airmotive, did not "consider[] the fact that the school's alleged negligence would have created physical risks to others which might call for a policy assessment quite different from that involved in the traditional educational malpractice case").

[10]As noted by Plaintiffs, "Simcom does not argue that [Plaintiffs] failed to allege sufficient facts to set forth a plausible claim of negligence,"(Doc. 42 at 19)—only that the claims should be recast as educational malpractice claims.

favor on the educational malpractice issue.  Simcom does not oppose such amendment. (See Doc. 47 at 3-4).  Accordingly, Simcom's motion to dismiss will be granted in this regard, but, as agreed by the parties, Plaintiffs will be given an opportunity to replead their breach of contract claim.

IV.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Simcom International, Inc.'s Motion to Dismiss Amended Complaint (Doc. 36) is **DENIED in part and GRANTED in part**.  The motion is **DENIED** insofar as it is seeks dismissal of Counts V and VI of the Amended Complaint as educational malpractice claims. The motion is **GRANTED** as to the breach of contract claim, which is **DISMISSED without prejudice**.

2.  Plaintiffs' Cross-Motion for Leave to File Second Amended Complaint (Doc. 42), which is unopposed, is **GRANTED**.  Plaintiffs may file a Second Amended Complaint **on or before Friday, March 1, 2013**.

**DONE** and **ORDERED** in Orlando, Florida this 13th day of February, 2013.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record